IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AMILCAR RIVERA-GUZMAN, <br><br> Plaintiff <br><br> v. <br><br> JUAN CARLOS PUIG MORALES, <br><br> Defendant | CIVIL NO. 10-1740 (JAF/JP) |

**OPINION AND ORDER**

Before the Court is Defendant Juan Carlos Puig-Morales' ("Puig") motion to dismiss (**No. 6**) and Plaintiff Amilcar Rivera-Guzman's ("Rivera") opposition thereto (No. 7). Plaintiff brought this lawsuit against Defendant alleging violations of the First Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff also brought a Puerto Rico law cause of action under Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's motion to dismiss is hereby **GRANTED**.

**I.**

**FACTUAL ALLEGATIONS**

Plaintiff Rivera allegedly was a career employee of the Puerto Rico Department of Treasury ("Treasury") for over 23 years. His last position was that of Director of Field Operations of the Sales Tax

CIVIL NO. 10-1740 (JAF/JP)      -2-

Bureau for the District of Ponce. Rivera was also a member of the Popular Democratic Party ("PDP"). In 2008, Luis Fortuno ("Governor Fortuno"), a member of the New Progressive Party ("NPP"), was elected as Governor of the Commonwealth of Puerto Rico. Governor Fortuno appointed Puig as the head of the Treasury. Puig is a member of the NPP.

Ever since taking office, Defendant has allegedly intended to remove all PDP career employees with managerial responsibilities in order to replace them with NPP members. Plaintiff alleges that through trust personnel Defendant investigated the political affiliation of all managerial employees. Through said investigative process, Puig allegedly became aware of Plaintiff's political affiliation.

In mid to late March 2009, Treasury sent various internal revenue agents to Ponce in preparation for the Inter-University Athletic League's annual competition. On March 29, 2009, Plaintiff allegedly had an argument with Armando Delgado-Roman ("Delgado"), one of the internal revenue agents sent to Ponce, over time sheets and attendance. Delgado, an active NPP member, was supervised by Plaintiff. The confrontation turned violent and a melee ensued. Plaintiff alleges that the police arrived, but that there were no charges pressed against either Plaintiff or Delgado. Thereafter, Treasury commenced an administrative disciplinary action against both employees. Plaintiff alleges that said action was only a formality

CIVIL NO. 10-1740 (JAF/JP)        -3-

because Puig had already determined that he was going to dismiss Plaintiff for political reasons regardless of the results of the investigation.

Defendant was allegedly fully of aware of Plaintiff's administrative case because he publicly discussed it in a speech, given on May 28, 2009, where he referred to the incident as an "act of corruption" which would be remedied. On the same day, Delgado allegedly spoke with Puig who informed Delgado that he had received various calls requesting leniency towards Delgado. However, Puig informed Delgado that he had decided to terminate Delgado. At said time, the administrative proceedings were still ongoing.

By means of a letter dated July 22, 2009 and served on July 30, 2009, Puig dismissed Plaintiff. Thereafter, Plaintiff was allegedly replaced by an NPP sympathizer. Plaintiff alleges that Puig also dismissed Delgado to conceal the discriminatory nature of the action against Plaintiff. Delgado, unlike Plaintiff, was offered the opportunity to resign in order for him to be eligible to apply to other public service positions.

On February 10, 2010, Delgado filed an action in the Puerto Rico Court of First Instance against Defendant, the Commonwealth of Puerto Rico and Plaintiff. Plaintiff states that, in Delgado's complaint, Delgado alleged: (1) that Puig wanted to dismiss Plaintiff for political reasons; (2) the events of Delgado's May 28, 2009 encounter

CIVIL NO. 10-1740 (JAF/JP)      -4-

with Puig; and (3) the perfunctory nature of the administrative proceedings. On July 30, 2010, Plaintiff filed the instant complaint.

**II.**

**LEGAL STANDARD FOR A MOTION TO DISMISS**

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).  As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 1974. The Court of Appeal for the First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríquez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007) (quoting Twombly, 127 S. Ct. at 1969).  Still, a court must draw all reasonable inferences in favor of the non moving party and accept all well-pleaded facts in the complaint as true. Sanchez v. Pereira-Castillo, 590 F.3d 31, 36 (1st Cir. 2009).

CIVIL NO. 10-1740 (JAF/JP)    -5-

### III.

### ANALYSIS

Defendant moves to dismiss Plaintiff's Section 1983 claims alleging political discrimination because Plaintiff failed to plead sufficient facts to state a cause of action. Plaintiff opposes the motion. The Court will now consider the parties' arguments.

**A.   Political Discrimination**

To establish a political discrimination case, Plaintiff must allege sufficient facts from which a Court can find that Plaintiff engaged in constitutionally protected conduct and that Plaintiff's political affiliation was a substantial or motivating factor behind the challenged employment action. See Gonzalez-De-Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004). A *prima facie* case of political discrimination requires that Plaintiff properly plead that: (1) Plaintiff and Defendant belong to opposing political affiliations; (2) Defendant has knowledge of Plaintiff's political affiliation; (3) a challenged employment action occurred; and (4) Plaintiff's political affiliation was a substantial or motivating factor behind the challenged employment action. Martinez Velez v. Rey Hernadez, 506 F.3d 32, 39 (1st Cir. 2007).

Defendant presents no arguments relating to the first and third elements of a *prima facie* case of political discrimination. Instead, Defendant argues that his motion to dismiss should be granted because

CIVIL NO. 10-1740 (JAF/JP)        -6-

Plaintiff has failed to plead sufficient facts to support the second and fourth elements of a *prima facie* case of political discrimination. Plaintiff opposes the arguments.

### 1. Puig's knowledge of Plaintiff's PDP affiliation

Defendant argues that Plaintiff has failed to plead sufficient facts to draw a reasonable inference that Puig was aware of Plaintiff's political affiliation with the PDP. Said argument fails. In his complaint, Plaintiff alleged that Defendant Puig had his trust personnel investigate the political affiliation of managerial employees such as Plaintiff (No. 1, ¶ 3.4). Plaintiff also alleged that from said investigative process Defendant became aware of Plaintiff's political affiliation (No. 1, ¶ 3.5). Taking Plaintiff's well-pleaded allegations as true, the Court finds that Plaintiff has provided sufficient facts to support a reasonable inference that Puig was aware of Plaintiff's political affiliation.

### 2. Plaintiff's PDP affiliation as a substantial or motivating factor in Puig's decision to dismiss Plaintiff.

Plaintiff argues that he properly pleaded the fourth element of a *prima facie* case of political discrimination in paragraphs 3.13 through 3.20 of his complaint (No. 7, p. 3-4).  In said paragraphs of the complaint, Plaintiff alleges that Delgado had a conversation with Puig, on May 28, 2009, in which Puig informed Delgado that he had already decided to dismiss Delgado (No. 1, ¶ 3.13). On said date,

the administrative investigation against Delgado and Plaintiff was still ongoing (No. 1, ¶ 3.14).

Plaintiff alleges that he was informed of his dismissal on July 30, 2009 and that he was replaced by an NPP member (No. 1, ¶ 3.15). Also, Plaintiff alleges that Delgado, an NPP member, was also dismissed (No. 1, ¶ 3.16). Plaintiff states that Delgado was dismissed to seem "evenhanded" and "to conceal the discriminatory nature of [P]laintiff's dismissal" (No. 1, ¶ 3.16). However, unlike with Plaintiff, Delgado was allegedly offered the opportunity to resign (No. 1, ¶ 3.17). Thereafter, Plaintiff alleges that Delgado filed his own suit against Puig and that Delgado alleged in his complaint (1) that Puig wanted to dismiss Plaintiff for political reasons, (2) the events of Delgado's May 28, 2009 encounter with Puig, and (3) the perfunctory nature of the administrative proceedings (No. 1, ¶¶ 3.18-3.19). From this, Plaintiff concludes that he was dismissed by Puig because of his political affiliation (No. 1, ¶ 3.20).

Taking Plaintiff's well-pleaded allegations as true, the Court finds that Plaintiff has failed to allege sufficient facts to support a reasonable inference that Plaintiff's political affiliation was a substantial or motivating factor in Puig's decision to dismiss Plaintiff. With regard to the allegations of Delgado's conversation with Puig, the Court finds that said allegations in no way support a finding that Plaintiff's political affiliation was a factor in the

CIVIL NO. 10-1740 (JAF/JP)     -8-

decision to dismiss Plaintiff. In fact, said conversation did not even address Plaintiff's situation. Instead, the allegations taken as true support a finding that Puig intended to dismiss only Delgado.

The circumstances of Plaintiff's dismissal are also insufficient to support any reasonable inference that Plaintiff's dismissal was related to his political affiliation. Both Plaintiff, a PDP supporter, and Delgado, an NPP member, were dismissed from their employment after the March 26, 2009 melee. Plaintiff attempts to cure this problem by pleading that Delgado was dismissed to seem evenhanded and to conceal the true motives behind Plaintiff's dismissal. However, said allegations are not entitled to any deference because "while not stating ultimate legal conclusions, [they] are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5).

The Court also notes that the conclusory allegation made by Delgado in his own complaint, that Plaintiff was dismissed based on his political affiliation, is not entitled to any deference and therefore cannot support a finding that Defendant was motivated by Plaintiff's political affiliation. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (stating that courts should disregard any statements which merely offer legal conclusions couched as facts).

CIVIL NO. 10-1740 (JAF/JP)        -9-

As such, the only allegations that Plaintiff properly pleaded supporting the fourth element of his political discrimination claim were that Plaintiff was replaced by an NPP member and that Delgado, unlike Plaintiff, was offered the opportunity to resign.[1] Even taking said allegations as true, the Court determines that the allegations that Plaintiff was replaced by an NPP member and that he was not offered the opportunity to resign do not support a reasonable inference, in this case, that Defendant's action of dismissing Plaintiff was motivated by Plaintiff's political affiliation.

This is the case because Plaintiff's other well-pleaded allegations make clear that the only reasonable inference permitted here is that Plaintiff was dismissed for non-discriminatory reasons. Specifically, Plaintiff's own allegations that Plaintiff had a physical altercation with an individual he supervised, Delgado, which turned into a melee and which even required the police's presence. After the melee and the investigation, Puig dismissed Plaintiff and Delgado, who belonged to the same political party as Puig, even though he received many calls requesting that he be lenient with Delgado. Even taking Plaintiff's other well-pleaded allegations as true, said allegations make clear that the only reasonable inference arising from the complaint was that Plaintiff was dismissed because

---

[1] It appears from the allegations in paragraphs 3.16 and 3.17 of the complaint that, while Delgado was offered the opportunity to resign, Delgado did not take advantage of said opportunity, and Puig still dismissed Delgado.

CIVIL NO. 10-1740 (JAF/JP)     -10-

of the incident with Delgado and not because of his political affiliation.

As such, the Court determines that Plaintiff has failed to allege sufficient facts to nudge his political discrimination claims "across the line from conceivable to plausible." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009); see also, Sepulveda-Villarini v. Department of Education of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010).

**B.    Puerto Rico Law Claims**

Plaintiff also bring claims arising under Puerto Rico law. Dismissal of pending state law claims is proper because an independent jurisdictional basis is lacking. Exercising jurisdiction over pendent state law claims once the federal law claims are no longer present in the lawsuit is discretionary. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit . . . [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity[]"). Here, the Court chooses not to hear the state law claims brought by Plaintiff and will, therefore, dismiss the state law claims without prejudice.

CIVIL NO. 10-1740 (JAF/JP)    -11-

**IV.**

**CONCLUSION**

In conclusion, the Court hereby **GRANTS** Defendant's motion to dismiss. A separate judgment will be entered accordingly dismissing the federal law claims with prejudice and the state law claims without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of July, 2011.

                                        S/JOSE ANTONIO FUSTE
                                        JOSÉ ANTONIO FUSTÉ
                                    UNITED STATES DISTRICT JUDGE